IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

E. D. By and Through Her
Mother and Next Friend, E.L.                                          PLAINTIFF

VERSUS                                    CIVIL ACTION NO. 2:11cv43KS-MTP

GERALD WAYNE PUGH, Officially and in his
individual capacity; SHERIFF KEVIN FORTENBERRY,
Officially; GREENE COUNTY, MISSISSIPPI BOARD OF
SUPERVISORS; GREENE COUNTY SCHOOL DISTRICT;
and JOHN DOES 1-25, in their official and individual capacities     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#173]** filed on behalf of Greene County, Mississippi and on a Motion for Summary Judgment **[#179]** filed on behalf of the Greene County School District (the "GCSD" or the "School District"). The court, having reviewed the motions, the consolidated response of Plaintiff, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motions are well taken and should be granted. The court specifically finds as follows:

On February 28, 2011, the Plaintiff filed suit against the Defendants regarding an "encounter" that the Plaintiff alleges occurred between E.D. and her great-uncle, Officer Gerald Wayne Pugh on October 9, 2009. The events which form the basis of the Complaint occurred, as alleged, after a football game at Greene County High School on October 9, 2009. According to E.D., the friend with whom she went to the game decided to leave before the game was over and, as such, she called her Aunt Barbara,

defendant Gerald Pugh's wife, to see if she could spend the night with them. After gaining her Aunt Barbara's consent to spend the night, E.D. called her grandfather and asked to be allowed to stay for the remainder of the game and spend the night with her Uncle Gerald and Aunt Barbara. E.D.'s grandfather agreed.

Following the game, E.D. approached Pugh about her spending the night with him and her Aunt Barbara and Pugh purportedly told her that he was aware that she would be staying the night and that she was to ride home with him. According to E.D., after the game, she waited in the stands until Pugh was ready to go and then got in the car with him. E.D. contends that rather than driver her to his home, he first drove her to an abandoned dirt road and raped her.

Pugh was an employee of the Greene County Sheriff's Department, and during the daytime, was assigned to the Greene County High School as its "school resource officer." The Plaintiff has filed this suit alleging a variety of state law claims as well as Constitutional claims under the provisions of 42 U.S.C. § 1983. The court has previously dismissed a demand for punitive damages and the state law claims against both Greene County and the GCSD. Additionally, Sheriff Kevin Fortenberry has been dismissed in all except his official capacity, and will be dealt with as Greene County in accordance with established precedent.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law."  FRCP 56(c); and *see Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the

Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts

showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also*, *Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

## **LAW AND ANALYSIS**

E.D. asserts that the defendants violated her right to substantive due process by improperly hiring training, supervising and disciplining Pugh. The Plaintiff has pursued her federal claims pursuant to 42 U.S.C. §1983. She must establish, as a prerequisite to maintaining a Section 1983 claim, the following:

(a) that the defendants were acting under color of state law, and

(b) that while acting under color or state law, the defendants violated rights of the plaintiff that are protected by the United States Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535; 101 S.Ct. 1908, 1912; 68 L.Ed.2d 420 (1981); *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir. 1984).

In the present case, the defendants contend that E. D. cannot prove that she suffered a violation of her constitutional rights at the hands of a person acting "under color of law." Under color of law means under "pretense of law." *Screws v. United States*, 325 U.S. 91, 111 (1945). Although acts of officers performing their official duties are included, regardless of whether or not the "hew to the line of their authority or
-5-

overstep it," acts of officers in the "ambit of their personal pursuits are generally excluded." *Bustos v. Martine Club, Inc.*, 599 F.3d 458, 464 (5th Cir. 2010). In other words, if an officer "pursues personal objectives without using his official power as a means to achieve his private aim, he is not acting under color of state law." *Id.*

The Fifth Circuit has reviewed the question of whether one is acting under color of law or pursuing a "private aim" on a number of occasions. In *United States v. Tarpley*, 945 F. 2 806, 809 (5th Cir. 1991), the court held that a deputy sheriff acted "under color of state law" when he lured his wife's former lover to his home and assaulted him. The court explained that the deputy did not simply use his service weapon and identify himself as a police officer; rather, he claimed to have authority for his actions because he was an officer of the law. *Id.* The court noted that "presence of police and the air of official authority pervaded the entire incident" and concluded that the deputy was therefore acting under of color of law. *Id.*

Similarly, in *Bennett v. Pippin*, 74 F. 3d 578, 589 (5th Cir. 1996), the Fifth Circuit explained that a sheriff acted under color of law when he raped a woman whom he had just finished questioning about a shooting he was investigating. The sheriff had stated to the plaintiff, who had refused his sexual advances that "I can do whatever I want. I am the sheriff." *Id.* The sheriff's actions were held to have a "real nexus" with his sheriff's authority.

Finally, in *United States v. Causey*, 185 F. 3d 407, 415-16 (5th Cir. 1999), the Fifth Circuit explained that a police officer was acting under color of law when he conspired to murder an individual who had filed an internal affairs complaint against him. The court explained that the officer held a meeting with his co-conspirators at the

police station, used his police car to show the co-conspirators where to find the victim, communicated with co-conspirators via his police radio, secured the cooperation of accomplices by assurances of police protection and planned to use his official authority to cover up the murder at the crime scene. *Id.* at 415. The officer was uniquely able to do these things because of his position as a police officer thus there was a sufficient nexus between his use and abuse of power. *Id.*

In this case, there is no nexus between Pugh's authority as a deputy sheriff of Greene County, Mississippi, or the GCSD and the alleged incident. As this court has already held, Pugh was not on duty for Greene County or the GCSD when the incident occurred. *See*, Memorandum Opinion and Order, CM/ECF Doc. No. 137, p. 6. Pugh completed his last shift for Greene County at approximately 3:00 p.m. on October 9, 2009—long before the alleged rape. Furthermore, Pugh did not return to work until October 13, 2009. If Pugh raped E.D. it certainly was not while he was working for Greene County or the GCSD.

The critical inquiry is the nature of the alleged unconstitutional act and whether Pugh was exercising official authority in executing the same. Here, there is absolutely no evidence that Pugh claimed or invoked any official power or authority as a Greene County Deputy in purportedly raping E.D. E.D. admits that she was going home with her "Uncle Gerald" to spend the night with her "Aunt Barbara." She was not threatened by Pugh in any way, shape, form or fashion, much less with any invocation of his power as a deputy, to get her to ride home with him from the ball game. *See*, Pl. Depo., p. 47-48, 52-58, 61-62. E.D. wanted to get to Pugh's home to spend the night and when she approached him about doing so and was allegedly informed by Pugh that she was

to ride with him, she voluntarily went with him to get to her chosen destination.

While the Plaintiff contends that Pugh "used his authority as a Sheriff's Deputy to threaten E.D." if she told of the alleged assault, there is no evidence of any invocation of his official authority as was evident in *Tarpley*, 945 F.2d at 809 and *Bennett*, 74 F. 3d at 589. Pugh never made any threat to arrest E.D. or to use any other tool available to him as a result of his position as a Greene County deputy in order to keep E.D. from telling others of the alleged incident. *See, Garner v. Wallace*, 139 F.Supp.2d 801, 804 (E.D. Tex. 2001) (officer not acting under color of state law and involved in purely private dispute where never threatening claimant with arrest).

Because there can be no underlying constitutional violation here, i.e. E.D. cannot demonstrate she suffered a constitutional harm at the hands of one acting "under color of state law," neither Greene County nor the GCSD can be held liable for any of Plaintiff's claims and are entitled to a complete dismissal.

However, even if E.D. could demonstrate an underlying constitutional violation, this alone is insufficient to hold Greene County or the School District liable for that violation as the neither can be held liable "solely because it employs a tortfeasor."[1] *Board of County Comm'rs v. Brown*, 520 U.S. 397 (1997). Rather, E.D. must identify a municipal policy or custom that caused her injuries. *See, Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). In particular, E.D. must establish that through its "deliberate conduct, [Greene County and/or the School District] was the 'moving force'

---

[1] The court has previously found that Pugh was not an employee of the School District. To the extent he was working the football game as an independent contractor, he was still not considered an employee of the School District at the time the incident allegedly occurred.

-8-

behind the injury alleged." *Brown*, 520 U.S. at 404. Isolated unconstitutional actions by municipal employees will almost never trigger liability. *Piotrowski*, 237 F.3d at 581.

The Fifth Circuit discussed the standard to govern the imposition of municipal liability in Section 1983 actions in *Webster v. Houston*, 735 F.2d 838, 841 (5th Cir. 1984):

> A municipality is liable under Section 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted pursuant to official policy. Official policy is:
>
> > 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policymaking authority;
>
> > or
>
> > 2. A persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policymaking authority. Actions of officers or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as above defined.

"The policy is that of the city, however, where it is made by an official under authority to do so given by the governing authority." *Bennett v. Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). "Policymakers act in the place of the governing body in the area of their responsibilities; they are not supervised except as to the totality of their performance." *Id.* at 769.

As stated previously, in order to find a municipality liable in a Section 1983 action, the constitutional deprivation must result from the implementation or execution

of a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers. This includes customs and usages which have become so persistent and widespread as to be permanent and well settled so as to constitute a custom or usage with a force of law. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 56 L.Ed.2d 611, 98 S.Ct. 2018 (1978).

However, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory. *Id.* at 690; and *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1303 (5th Cir. 1995). The same is true of supervisory officials in that there must be some connection between the actions of the defendants and the alleged constitutional violations. *See Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996); and *Hinshaw v. Doffer*, 785 F.2d 1260 (5th Cir. 1986). "Supervisory officials may be liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff[s'] injury." *Baker*, 75 F.3d at 199, (quoting *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992)).

In "limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983;" however, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). To succeed on a failure to train claim, the plaintiff must show that (1) a supervisor failed to train the subordinate official; (2) a causal link exists between the failure to train and the violation of the plaintiff's rights;

and (3) the failure to train amounts to deliberate indifference.  *Smith v. Brenoettsy*, 158 F.3d 908, 911--12 (5th Cir. 1998).  For an official to act with deliberate indifference, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 912.  Furthermore, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation."  *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003).

For "a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform."  *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).  A plaintiff must "allege with specificity how a particular training program is defective." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009).

Here, E.D. has wholly failed to point out with specificity how the County's training program is defective.[2]  To the contrary, E.D. merely states that the County failed to provide "special training [on] how to interact with students or what appropriate or inappropriate conduct was."  Further, E.D. complains that Pugh was not provided training under a "school safety program."  It is well-settled that a plaintiff must show more than that "an injury or accident could have been avoided if an officer had better or

---

[2] E.D. argues that the Greene County School District can be held liable for Pugh's actions even if he were a "private actor." While E.D. does not argue Greene County can be held liable under this theory, it is worth noting that the body of law cited involves factual scenarios completely different than that involved in this case. The cases cited by E.D. involve claimants seeking to hold a private entity liable under Section 1983 for the actions of one of their employees. The entity which E.D. seeks to hold liable here—the School District—is not a private entity; rather, the School District is a governmental entity. Thus, this argument is simply an attempted end run around the body of law governing this situation and an effort to hold the School vicariously liable in spite of the prohibition against the same.  Further, the court has previously found hat Pugh was not an employee of the GCSD, thus negating a large portion of Plaintiff's argument regarding the liability of the School District.

more training, sufficient to equip him to avoid the particular injury-causing conduct [because]… [s]uch a claim could be made about almost any encounter resulting in injury…." *City of Canton*, 489 U.S. at 391. Furthermore, generally, a plaintiff cannot sustain a failure to train or inadequate training claim under § 1983 if the municipality in question complies with state-mandated training standards for its officers. *See Benavides v. County of Wilson*, 955 F.2d 968, 972-73 (5th Cir. 1992). Here the Plaintiff has not provided record evidence sufficient to meet the rigorous standard of deliberate indifference.

Additionally, E.D. fails to note that Pugh was trained by a Mississippi sanctioned law enforcement academy. *See*, Certification, CLT-000012; see also, CLT-000002-11, 000013-18; see also, Fortinberry Depo., p. 20 ("Columbine" type school training). Furthermore, Pugh was provided a copy of Greene County's policy manual which makes it abundantly clear that sexual assault and/or criminal acts are forbidden. *See*, Fortinberry Depo., p. 46-47; CLT-000133-34; 000136; 000147-49; 000158; 000333; 000336-338; 000367-69; 000373.

E.D. also alleges she suffered constitutional harm because Pugh was not properly supervised by the defendants. To establish liability for a failure to supervise, a plaintiff must show that (1) the supervisor failed to supervise a subordinate official; (2) a causal link exists between the failure to supervise and the violation of her rights; and (3) the failure to supervise amounts to deliberate indifference. *Smith v. Brenoettsy*, 158 F. 3d 908, 911-12 (5th Cir. 1998).

Here, E.D. has failed to provide evidence that any lack of supervision of Pugh resulted in his raping her. In her opposition, E.D. merely states that Pugh "was a free

entity on his own at the school and while working the football games," with no "one watching him, telling him what to do." Even taking these allegations as true, E.D. gets nowhere. E.D. does not allege that she was raped at school or at a football game. To the contrary, E.D. purports to have been raped after a football game while on the way home with Pugh to spend the night with him and his wife Barbara.

Finally, E.D. contends that the defendants failed to adequately screen Pugh when he was hired as a deputy and that, as a result, he was an inappropriate hire. To succeed on a deficient hiring claim, the Plaintiff must show deliberate indifference. That is, a Section 1983 claim may arise from egregious hiring practices where a Plaintiff establishes actual knowledge of the seriously deficient character of an applicant. *Stokes v. Bullins*, 844 F.2d. 269 (5th Cir. 1988). The United States Supreme Court explained in *Brown*:

> Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference.

*Brown*, 520 U.S. at 398.

Proof that a constitutional deprivation is a "plainly obvious consequence" requires more than "mere probability that any officer inadequately screened will inflict any constitutional injury," rather, it requires "examination of the specific facts of the officer's history." The Plaintiff must show that the hired officer was highly likely to inflict the particular type of injury suffered by them. *Gros v. City of Grand Prairie*, 209 F.3d 431, 433-34 (5th Cir. 2000).

In her opposition, E.D. claims that the County's screening process for Pugh

"consisted of [his] supporting…Sheriff Fortinberry in a run-off election. However, Sheriff Fortinberry has provided sworn testimony that his hiring Pugh was based upon his personal knowledge of Pugh. In particular, Fortinberry testified that he has known Pugh for thirty (30) years and that his reputation in the community was "good." Furthermore, before hiring Pugh, Fortinberry performed a standard background check (including running him through the FBI's National Crime Information Center database) and found "nothing…there that would preempt" the County from hiring Pugh. Fortinberry acknowledged that he was aware Pugh had been fired by the prior sheriff but stated that his termination was for running against the former sheriff. While the Sheriff that fired him, Sheriff Stanley McLeod, does not state that he fired him for the political reasons cited by Fortinberry, neither does he state he fired him for sexual misconduct. McLeod states he fired him for a "variety of reasons" none of which involved sexual misconduct.

The Plaintiff acknowledges the difficulty of presenting a viable claim in the face of the legal framework set up by *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in which the Court denied *respondeat superior* liability, but held that public entities and supervisory officials could be held liable for sustaining wrongful policies under deliberate indifference standards. She then asserts that the Supreme Court has caused a dizzying array of Byzantine legal decisions, the off-shoot of which is that municipal liability is all but dead. She goes on to posit that:

> Some brave Court should either a) rule that there is *respondeat superior* liability because, under the current scheme of state laws on sovereign immunity and *Monell* and its constraints, there is no longer any remedy which holds the encroaching police state accountable (many commentators are saying just that); or b) hold that there is no such thing

as municipal liability under the extreme set of rules that have been set up by the Courts and give the Supreme Court a chance to say again whether *Monell* and its conceptual labyrinth is still good law.

Plaintiff concludes that she, nonetheless, deserves her day in court to resolve clear issues of fact which present a colorable claim.

Based on the foregoing analysis of the clear law in this area, the court declines the Plaintiff's invitation to ignore decades of well-established precedent of both the Fifth Circuit and the United States Supreme Court. The Plaintiff, has in fact, failed to present a colorable claim as to Greene County or the Greene County School District and they both are entitled to summary judgment.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#173]** filed on behalf of Greene County, Mississippi and the Motion for Summary Judgment **[#179]** filed on behalf of the Greene County School District are granted and the Plaintiff's Complaint is dismissed with prejudice as to these two defendants. A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this 13th day of June, 2012.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE